Q———— V————, Jr., Appellant,

v.

**The STATE of Texas, Appellee.**

No. 15859.

Court of Civil Appeals of Texas,
San Antonio.

Feb. 15, 1978.

Rehearing Denied April 26, 1978.

**782**

Antonio G. Cantu, Stephen P. Takas, Jr., San Antonio, for appellant.

Bill M. White, Criminal Dist. Atty., Joe F. Brown, Jr., Gerald R. Zwernemann, Alan E. Battaglia, Asst. Criminal Dist. Attys., San Antonio, for appellee.

CADENA, Chief Justice.

Appellant, a child, complains of the action of the Juvenile Court of Bexar County in certifying him to a district court for trial as an adult on a charge of murder. According to appellant's brief, he also appeals from an order entered by the district court accepting the case for criminal prosecution of appellant as an adult.

Appellant's appeal is based on the following contentions: (1) The trial court erroneously held that appellant cannot be rehabilitated by use of procedures, services, and facilities currently available to the Juvenile Court. (2) The finding that the offense was committed in an aggressive and premeditated manner is against the great weight of the evidence. (3) The trial court failed to include in its order a finding that no adjudication hearing had been had concerning the offense which was the subject of the "transfer" hearing. (4) The trial court failed to embody in its order a statement specifically reciting the reasons for ordering appellant to be tried as an adult. (5) The criminal district court failed to consider the matters enumerated in § 54.02, Tex.Family Code Ann. (1977), in exercising its discretionary right to either accept jurisdiction over appellant or to remand the case to the Juvenile Court.

A social worker who had been working with appellant testified that, in his opinion, appellant could be successfully rehabilitated by using the facilities available to the Juvenile Court. He based this conclusion on the fact that appellant had been cooperative and had responded to counseling in an affirmative manner. This conclusion was contradicted by the county psychologist who had conducted a psychological evaluation of appellant. This witness testified that appellant had "a probability for violent behavior" and that his rehabilitation would require a "structured environment." In his opinion, the rehabilitation of appellant would require psychological counseling and other rehabilitative measures in such structured environment over a long period of time, and that the rehabilitative process would not prove fruitful if it did not extend beyond appellant's 18th birthday.

█ It is true, as appellant points out, that the county psychologist exhibited little knowledge concerning the nature of the procedures, services, and facilities available to the Juvenile Court. However, he was unequivocal in his testimony to the effect that efforts to achieve appellant's rehabilitation would be ineffective if they did not extend beyond his 18th birthday. This clear conflict in the testimony raised an issue of fact and it cannot be said that the trial court erred in concluding that appellant could not be rehabilitated during the

relatively short period of time during which he would have the benefit of the facilities available to the Texas Youth Council and the Juvenile Court.

■ The evidence is also conflicting on the question of whether the offense was committed in an aggressive manner.

Tomas Ortiz testified that he was an eye-witness to the killing and his testimony may be summarized by saying that he testified that appellant slew his victim without provocation. According to this witness, appellant, armed with a pistol, went to the home of the witness looking for the deceased, who lived next door. After a short interval, the deceased arrived at the home of the witness, whereupon appellant asked the deceased if he knew the whereabouts of a friend of deceased. When the deceased professed ignorance of the friend's whereabouts, appellant asked, "Do you want me to shoot you?" Although deceased gave a negative answer to this question, appellant proceeded to shoot him. According to this witness, deceased was shot "for no reason."

Appellant showed that Ortiz had, prior to the hearing, given two statements to investigating officers in which he stated that he knew nothing of the shooting. He explained this by saying that at the time he gave such statements he was afraid.

Appellant produced several witnesses, including the widow of the deceased, who testified that, prior to the killing, deceased had severely beaten appellant. The county psychologist testified that appellant, during an interview, had stated that he shot the deceased in self-defense, and that it was necessary for appellant to shoot in order to prevent being killed. Appellant also told the psychologist that he was armed at the time because his life had been threatened by a person other than deceased.

The widow of the deceased testified that, after she heard the shots, she came out of her house and saw her husband bleeding. At that time appellant told her that he had shot her husband because her husband "had attempted to jump" appellant and was going to hit appellant with a beer bottle.

Appellant there claims that the testimony of the widow shows that deceased was shot because he attempted to assault appellant. We disagree. The widow did not witness the shooting and her testimony consists of no more than a recital of what appellant told her after the shooting.

The testimony relied on by appellant, at best, raises a question of fact and would support the conclusion that Ortiz was not telling the truth at the time he testified. However, proof of prior inconsistent statements by a witness does not require that the testimony of such witness be rejected. Here, the court obviously believed the explanation given by the witness concerning the reasons why he made the prior inconsistent statements. The trial court had the right to conclude that the witness, whom appellant describes as an "admitted liar," had, because of fear, lied when he made the prior inconsistent statements, and that his description of the circumstances surrounding the killing, given from the witness stand, was true. It is true that the witness admitted he had lied, but this admission branded as false his prior inconsistent statements, not the testimony he gave in court.

There is no basis for the conclusion that the court erred in finding, on the basis of the testimony of Ortiz, that the offense was committed in an aggressive manner.

■ The Family Code, in § 54.02(a)(2), provides that the juvenile court may "waive" its jurisdiction and transfer a child to a district court for criminal proceedings if the child was 15 years of age at the time he is alleged to have committed the offense in question and "no adjudication hearing has been conducted concerning that offense; . . . ." The Code requires that the juvenile court, if it waives its jurisdiction, "state specifically in the order its reasons for waiver . . . ." § 54.02(h). Appellant urges that it is necessary that the court, in its order, state specifically that no adjudication hearing has been had concerning the offense in question. We do not agree.

The absence of an adjudication hearing is not a "reason" for the waiver of the juris-

diction of the Juvenile Court. The word "reason," when used as a noun, refers to a statement made in explanation or justification. It refers to a reasonable ground or motive; a sufficient explanation; that is, a cause. The fact that no adjudication hearing has been held is not a justification for waiver of juvenile court jurisdiction. It is not a rational ground for such waiver. It is not the motive for or cause of the waiver. It certainly is not a sufficient ground or explanation for the waiver of jurisdiction. There can be no doubt that if the order merely stated that the Juvenile Court waived its jurisdiction because there had been no adjudication hearing, such statement could not be considered a compliance with the requirement embodied in § 54.-02(h) of the Family Code.

■ The fact that an adjudication hearing has been had precludes the possibility of waiver of its jurisdiction by the Juvenile Court. The fact that no such hearing has been held merely permits the exercise by the Juvenile Court of its power to waive jurisdiction and is neither a reason for waiver nor a reason for refusing to waive jurisdiction. Circumstances which permit the exercise of a power do not constitute reasons for exercising such power in a particular way.

The evidence in this case establishes conclusively that no adjudication hearing had been held. Cf. In re W. R. M., 534 S.W.2d 178 (Tex.Civ.App.—Eastland 1976, no writ), where, although the question here urged by appellant was not discussed, an order was affirmed although it contained no recitation concerning the holding of an adjudication hearing.

We have no quarrel with the result reached in In re J. R. C., 522 S.W.2d 579 (Tex.Civ.App.—Texarkana 1975, writ ref'd n. r. e.). The order there failed to recite the reasons for supporting the decision of the juvenile court to waive jurisdiction. This defect was a violation of the express requirement found in § 54.02(h), and the court expressly noted that this defect in the order was "of more potential for error" than the failure of the order to recite that no adjudi-

cation hearing had been held. If J. R. C. holds that a failure to recite the absence of an adjudication hearing renders the waiver order invalid, we decline to follow that holding.

■ In the transfer or waiver order the Juvenile Court stated that it considered the matters enumerated in § 54.02(f), setting out the matters enumerated in such section. The order contains the following findings: (1) Appellant is of sufficient intelligence and maturity to have aided in his defense. (2) The offense, murder, was against the person of another and was committed in an aggressive and premeditated manner. (3) The evidence concerning the offense was of such a nature that a grand jury may be expected to return an indictment. (4) The evidence and reports presented to the court demonstrate that there is little, if any, prospect of adequate protection to the public and likelihood of reasonable rehabilitation of appellant by the use of procedures, services, and facilities currently available to the Court.

While the enumerated findings are not designated as "reasons" for the waiver of jurisdiction, it is clear that the action of the Court is based on such findings. The fact findings are certainly an explanation of the trial court's action. Without holding that the mere fact that the offense involved is murder is a sufficient reason for waiver of Juvenile Court jurisdiction, we hold that the order is sufficiently specific as to the "reasons" for such waiver. The findings show the commission of a serious crime in an aggressive and premeditated manner and, more importantly, show that the primary purposes of our correctional institutions, protection of the public and rehabilitation of the offender, cannot be accomplished within the framework of the Juvenile Court system. Cf. In re Buchanan, 433 S.W.2d 787 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.).

■ Appellant's final point, if it reflects error, relates to an error allegedly committed by the Criminal District Court rather than the Juvenile Court.

According to § 54.02(h) of the Family Code, "On transfer of the child for criminal proceedings, he shall be dealt with as an adult and in accordance with the Texas Code of Criminal Procedure, . . .. The transfer of custody is an arrest. The examining trial shall be conducted by the court to which the case was transferred, which may remand the child to the jurisdiction of the juvenile court."

Appellant complains that the Criminal District Court erred in refusing to require the State, at the examining trial, to present evidence with respect to the matters enumerated in § 54.02(f) of the Family Code.

The portion of the Family Code relied on by appellant enumerates the matters which a juvenile court should consider when it is called upon to make a decision concerning waiver of its jurisdiction. There is nothing in the Family Code indicating that, after transfer, the examining trial conducted by the criminal district court must be, in effect, a second hearing on the question of waiver of juvenile court jurisdiction. Appellant's contention is inconsistent with the provision in § 54.02(h) that, after transfer, the child shall be treated as an adult, and that all proceedings thereafter shall be governed by the Code of Criminal Procedure. The examining trial conducted by the criminal district court is, of course, a "proceeding" which takes place after the transfer. Therefore, the examining trial is governed by the Code of Criminal Procedure and not by the Family Code, with but one exception. If the criminal district court, after conducting the examining trial, concludes that there is no probable cause for holding the child to await the action of the grand jury, it may, instead of ordering the child released, as would be the result in a case involving an adult, remand the child to the jurisdiction of the juvenile court. This sole difference in treatment is due to the express provision contained in the last sentence of § 54.02(h).

In any event, the error, if any, was committed during the course of a criminal proceeding which we have no jurisdiction to review, since our appellate jurisdiction is limited to civil cases. Tex.Const. art. V, § 6.

The judgment of the trial court is affirmed.